IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KELSI HAWKINS, *et al.*,<br>Individually and as Representatives of<br>the Estate of Julius Francis, Jr.<br> *Plaintiffs*,<br><br> v.<br><br>LINDA D. BARAKAT, M.D.<br> *Defendant*. | Civil No. ELH-20-1386 |

## MEMORANDUM

In this medical malpractice action, plaintiffs Kelsi Hawkins and Julius Francis, Sr. ("Mr. Francis"), in their individual capacities and as representatives of the Estate of their deceased infant son, Julius Francis, Jr. ("Francis, Jr." or the "Decedent"), brought suit against defendant Linda Barakat, M.D. They allege that Dr. Barakat was negligent in performing a cesarean section, which purportedly caused severe injuries to Francis, Jr. and resulted in his tragic death, only a few weeks after he was born.

Plaintiffs' Complaint contains two counts, both of which are predicated on defendant's alleged negligence. ECF 1 (the "Complaint"). In Count I, plaintiffs bring a claim in their individual capacities for wrongful death. *Id.* ¶¶ 54-63. And, Count II presents a survival claim on behalf of plaintiffs in their capacities as the personal representatives of the Estate of Francis, Jr. *Id.* ¶¶ 64-73.

Of import here, Dr. Barakat answered the Complaint and asserted various defenses. ECF 8. These included claims of contributory negligence and assumption of the risk. *Id.*

Following a lengthy and hotly disputed period of discovery, plaintiffs filed a motion for summary judgment as to Dr. Barakat's defenses of assumption of the risk and contributory

negligence (ECF 57), which is supported by a memorandum of law.  ECF 57-1 (collectively, the "Motion").  Plaintiffs also appended six exhibits to the Motion.  *See* ECF 57-3 through ECF 57-8

Defendant filed a response to the Motion, in which she "concede[d] for the purposes of this case that the evidence revealed in discovery may not be enough under Maryland law to generate jury issues on the affirmative defenses of assumption of the risk and contributory negligence." ECF 58 at 1.  For that reason, Dr. Barakat advised the Court that she "does not intend to ask for jury instructions" on these defenses, and that she "does not oppose Plaintiffs' Motion."  *Id.*[1]

Thereafter, plaintiffs submitted a filing with the Court, contending that because "there is no opposition by the Defendant, summary judgment should be granted and the case should proceed to trial."  ECF 59.

No hearing is necessary to resolve the Motion.  *See* Local Rule 105.6.  For the reasons that follow, I shall grant the Motion.

## I.  Factual Background[2]

On the evening of August 30, 2017, at approximately 6:15 p.m., Hawkins arrived at the labor and delivery unit of the Upper Chesapeake Medical Center, "complaining of vaginal bleeding and slightly elevated blood pressure."  ECF 57-1 at 1.  At that time, she was roughly 33 weeks pregnant.  *Id.*  Further, Hawkins had a "prior medical history of diabetes . . . ."  *Id.*  Accordingly, "the plan was to have [Hawkins] admitted to the hospital and consider inducing labor."  *Id.* at 1-2.  Approximately 24 hours later, at 7:00 p.m. on September 1, 2017, "Ms. Hawkins experienced a headache along with slightly elevated blood pressure."  *Id.* at 2.  Accordingly, "the physicians,

---

[1] However, defendant maintains that "she is entitled to discuss the difficulties she encountered with this pregnancy and the delivery."  *Id.* at 2.

[2] For present purposes, I draw on the facts as described in the Motion, construed in the light most favorable to the non-moving party, Dr. Barakat, as required at the summary judgment stage.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

including the Defendant, Dr. Barakat, made the decision to induce labor with the administration of Pitocin." ECF 57-1 at 2.

About four hours later, Dr. Barakat noted that "Ms. Hawkins' baby's fetal heart rate tracings were showing features of a category II strip." *Id.* For this reason, and because "Ms. Hawkins was remote from delivery, Dr. Barakat made the decision to perform a non-emergent cesarean section." *Id.*

Plaintiffs assert: "Once a physician makes a uterine incision for a cesarean section, uterine tone increases causing a disruption in the utero-placental blood flow and oxygenation to the baby." *Id.* Thus, "the period of interruption of utero-placental blood flow is extended as the time interval from uterine incision to delivery increases." *Id.* Consequently, once "the uterus is incised, the standard of care is to extract the baby from the uterus within the first couple of minutes" of the procedure. *Id.*

In this case, seven minutes elapsed between incision and delivery. *Id.* Plaintiffs aver that the resulting "disruption in the lack of blood flow to Julius Francis, Jr. caused him to suffer hypoxic ischemic encephalopathy ('HIE')." *Id.* As a result, Francis, Jr. was born "with no heart rate and required 22 minutes of resuscitation, including chest compressions and intubation." *Id.* "During this period of time, Julius Francis, Jr. suffered hypoxic injury and blood clots . . . ." *Id.* Thereafter, Francis, Jr. "was transferred to the University of Maryland Medical Center; however, he passed away on September 29, 2017 due to severe hypoxic injury." *Id.*

Plaintiffs allege that the Decedent's death was the "direct and proximate result" of Dr. Barakat's negligent delay in delivering Francis, Jr., which caused him to suffer "severe and permanent physical injury." *Id.* Of import here, plaintiffs aver: "Defendant has not disclosed any facts in support of the defenses of assumption of the risk or contributory negligence and as such

there is no genuine dispute as to any material fact that bears on" these affirmative defenses. ECF 57-1 at 3.

## II. Legal Principles

### A. Rule 56

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *see also Iraq Middle Market Development Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017) ("A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law."). The nonmoving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 585-86.

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir.

2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Notably, "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (May 17, 2004); *see also Celotex*, 477 U.S. at 322-24. As indicated, the court must view all of the facts, including any reasonable inferences to be drawn, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587; *accord Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *accord Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016). Thus, in considering a summary judgment motion, the court may not make credibility determinations. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007).

Where there is conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431,

5

442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

However, to defeat summary judgment, conflicting evidence must give rise to a genuine dispute of material fact. *Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Sharif v. United Airlines, Inc.*, 841 F.3d 199, 204 (4th Cir. 2016). Conversely, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "[t]he mere existence of a scintilla of evidence in support of the [movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [movant]." *Id.*

### B. Choice of Law

A federal court sitting in diversity must apply the law of the forum state in which the court is located, including the forum state's choice-of-law rules, unless a compelling federal interest directs otherwise. *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). The forum state is, of course, Maryland.

In tort cases, Maryland applies the doctrine of *lex loci delicti*, i.e., the law of the jurisdiction where the alleged wrong occurred. *Lewis v. Waletzky*, 422 Md. 647, 657, 31 A.3d 123, 129 (2011); *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 620, 925 A.2d 636, 648 (2007); *Kortobi v. Kass*, 182 Md. App. 424, 443, 957 A.2d 1128, 1139 (2008), *aff'd*, 410 Md. 168, 978 A.2d 247 (2009). Because the alleged wrong occurred in Maryland (*see* ECF 57-1 at 1), Maryland's substantive law applies here.

### C. Assumption of the Risk and Contributory Negligence

Assumption of the risk and contributory negligence "are closely related and often overlapping defenses." *Schroyer v. McNeal*, 323 Md. 275, 280, 592 A.2d 1119, 1121 (1991). In Maryland, assumption of the risk and contributory negligence are affirmative defenses that, if proved by the defense, completely bar a plaintiff's recovery. *Coleman v. Soccer Ass'n of Columbia*, 432 Md. 679, 690, 69 A.3d 1149, 1155 (2013) (contributory negligence); *Crews v. Hollenbach,* 358 Md. 627, 640, 751 A.2d 481, 488 (2000) (assumption of the risk); *Kassama v. Magat*, 136 Md. App. 637, 657 767 A.2d 348, 359 (2001), *aff'd*, 368 Md. 113, 792 A.2d 1102 (2002) (contributory negligence).

"Contributory negligence is the neglect of the duty imposed upon all [persons] to observe ordinary care for their own safety." *Campfield v. Crowther*, 252 Md. 88, 93, 249 A.2d 168, 172 (1969). It is "the doing of, or omitting to do, some act or thing which a reasonably careful person would not have done or omitted to do under the circumstances, and which . . . thereby becomes the . . . proximate cause of the injury." *Miller v. Michalek*, 13 Md. App. 16, 19, 281 A.2d 117, 118 (1971) (citation omitted). "The focus of the contributory negligence defense . . . 'is whether the plaintiff took appropriate precautions to protect his [or her] own interests.'" *Kassama*, 368 Md. at 127, 792 A.2d at 1110 (internal citation omitted).

The doctrine of assumption of the risk "is grounded on the theory that a plaintiff who voluntarily consents, either expressly or impliedly, to exposure to a known risk cannot later sue for damages incurred from exposure to that risk." *Schroyer*, 323 Md. at 280, 592 A.3d at 1121; *see also ADM P'ship v. Martin*, 348 Md. 84, 90-91, 702 A.2d 730, 734 (1997). The requirements for assumption of the risk are well settled. *Poole v. Cookley & Williams Construction, Inc.*, 423 Md. 91, 110-11, 31 A.2d 212, 224 (2011); *ADM P'ship*, 348 Md. at 90-91, 702 A.2d at 734. "[T]o

establish the defense of assumption of risk the defendant must show that the plaintiff: (1) had knowledge of the risk of the danger; (2) appreciated that risk; and (3) voluntarily confronted the risk of danger." *ADM P'ship*, 348 Md. at 90-91, 702 A.2d at 734.

Assumption of the risk will apply only if "'the undisputed evidence and all permissible inferences therefrom *clearly* establish that the risk of danger was *fully* known to and *understood* by the plaintiff.'" *Schroyer*, 323 Md. at 283, 592 A.2d at 1123 (quoting *Kasten Constr. Co. v. Evans*, 260 Md. 536, 544, 273 A.2d 90, 94 (1971) (emphasis in *Kasten* )). An objective standard is used to determine whether the plaintiff appreciated and understood the risk and whether the action was voluntary. *Poole*, 423 Md. at 111, 31 A.3d at 224; *Morgan State Univ. v. Walker*, 397 Md. 509, 515 (2007); *ADM P'ship*, 348 Md. at 91, 702 A.2d at 734. However, "'a plaintiff will not be heard to say that he did not comprehend a risk which must have been obvious to him.'" *ADM P'ship*, 348 Md. at 92, 702 A.2d at 734 (citation omitted).

In *Poole*, 423 Md. 91, 31 A.3d 212, the Maryland Court of Appeals noted: "'The same conduct on the part of the plaintiff may . . . amount to both assumption of risk and contributory negligence, and may subject [the plaintiff] to both defenses.'" *Id.* at 112, 31 A.3d at 224 (citation omitted). The court explained that "the traditional basis for distinguishing the two doctrines is that 'assumption of risk is the matter of knowledge of the danger and voluntary acquiescence in it, while contributory negligence is a matter of some fault or departure from the standard of conduct of the reasonable person . . . . '" *Id.* (citation omitted).

Unlike contributory negligence, assumption of the risk does not require a finding that the plaintiff was negligent. *Schroyer*, 323 Md. at 282-83, 592 A.2d at 1123. The fact that the plaintiff was aware of the risk, and voluntarily undertook the risk, is sufficient to invoke the defense. *Id.* at 283, 592 A.2d at 1123. Put another way, when a plaintiff assumes a risk, the plaintiff's voluntary

8

action in showing a "willingness to take a chance" supersedes any duty the defendant owed the plaintiff to act reasonably for the plaintiff's safety. *Id.* at 282, 592 A.2d at 1123; *see Prudential Secs. v. e-Net, Inc.*, 140 Md. App. 194, 226-27, 780 A.2d 359, 377-78 (2001).

Ordinarily, it is for the jury to determine whether a plaintiff knew of the danger, appreciated the risk, and acted voluntarily. W. KEETON, D. DOBBS, R. KEETON, & D. OWEN, *Prosser and Keeton on the Law of Torts* § 68 at 487; *see also Thomas v. Panco Mgmt. of Maryland, LLC*, 423 Md. 387, 395, 31 A.3d 583, 588 (2011); *Crews*, 358 Md. at 644, 751 A.2d at 490; *Miller v. Michalek*, 13 Md. App. at 23, 281 A.2d at 121. The same is true of the contributory negligence question. "As a general rule, the issue of contributory negligence is a question for the jury '[w]here there is a conflict of evidence as to material facts relied on to establish contributory negligence, or more than one inference may be reasonably drawn therefrom.'" *Baltimore Gas & Elec. Co. v. Flippo*, 348 Md. 680, 703, 705 A.2d 1144, 1155 (1998) (quoting *Reiser v. Abramson*, 264 Md. 372, 377-78, 286 A.2d 91, 93 (1972)); *see also Belleson v. Klohr*, 257 Md. 642, 646, 264 A.2d 274, 276 (1970) ("If there is any competent evidence, however slight, leading to support the plaintiff's right to recover, the case should be submitted to the jury."); *Angkuw v. Rosenthal*, No. 185, Sept. Term 2016, 2017 WL 4390428, at *7 (Md. Ct. Spec. App. Oct. 3, 2017).

### III.  Discussion

Plaintiffs seek summary judgment as to defendants' affirmative defenses of assumption of the risk and contributory negligence. ECF 57-1 at 1. As mentioned, Dr. Barakat does not oppose the Motion. *See* ECF 58. Nonetheless, a district judge must "'thoroughly analyze[ ]' even an unopposed motion for summary judgment." *Philips v. Saibu*, PWG-17-3221, 2020 WL 42754, at *1 (D. Md. Jan. 3, 2020) (alterations in *Philips*) (quoting *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 380 (4th Cir. 2013)).

Indeed, in considering a motion for summary judgment, the district court "*must* review the motion, even if unopposed, and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 409 n.8 (4th Cir. 2010) (emphasis in original) (citation and internal quotations omitted). "Although the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the moving party must still show that the uncontroverted facts entitle the party to 'a judgment as a matter of law.'" *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993).

### A.

Plaintiffs argue that Dr. Barakat's defense of assumption of the risk is not viable because "[u]nder applicable Maryland law there is almost no factual scenario by which a Defendant healthcare provider can raise [this defense] to a claim of medical negligence." ECF 57-1 at 4. In support of that proposition, plaintiffs invoke (*see id.* at 4-5) a decision from the Maryland Court of Special Appeals, *Schwartz v. Johnson*, 206 Md. App. 458, 49 A.3d 349 (2012). There, the court stated, in relevant part, *id*. at 480-81, 49 A.3d at 371-72:

> [O]ur review of out-of-state case law indicates that the viability of assumption of risk as a defense in medical malpractice cases, premised on negligence as opposed to informed consent, is limited to certain factual situations. The rationale for the limited viability of the assumption of risk defense in a medical malpractice action may be explained by the elements of the defense itself; for a person to "assume the risk," he or she must have had knowledge of the risk of the danger, appreciated that risk, and voluntarily accepted that the risk could occur. *See ADM P'ship* 348 Md. at 90–91, 702 A.2d 730. Therefore, in the healthcare context, for a patient to have "assumed the risk" of a negligent medical procedure, he or she must have voluntarily accepted the risk that the doctor would negligently complete the procedure. Such a factual scenario, however, will almost never occur.
>
> In our view, for a court to hold that a patient assumed the risk of a physician acting negligently in a medical procedure is "tantamount to a finding that the [physician] owed no duty" to the patient. *Storm v. NSL Rockland Place, LLC,* 898 A.2d 874, 880 (Del. Super. Ct. 2005).

Thus, the *Schwartz* Court concluded, 206 Md. App. at 482, 49 A.3d at 372:"[E]xcept in cases involving a refusal or delay in undergoing recommended treatment or the pursuit of unconventional medical treatment, a healthcare provider cannot invoke the affirmative defense of assumption of risk in a medical malpractice claim brought by his or her patient where a breach of informed consent has not been alleged."

As plaintiffs point out, "no claim for lack of informed consent had been plead [sic] against Dr. Barakat." ECF 57-1 at 5.  Further, no evidence has been presented to suggest that Hawkins "refus[ed] or delay[ed] . . . undergoing recommended treatment" or otherwise "pursu[ed] . . . unconventional medical treatment . . . ." *Schwartz*, 206 Md. App. at 482, 49 A.3d at 372.

It is hardly surprising that defendant conceded the issue.  The boilerplate defense was specious.  I shall grant the Motion as to Dr. Barakat's affirmative defense of assumption of the risk.

**B.**

Plaintiffs advance a similar argument with respect to defendant's assertion of contributory negligence.  In particular, they assert that Dr. Barakat "cannot, as a matter of law, introduce any evidence or make any argument that Kelsi Hawkins's actions or inactions before she saw Dr. Barakat on September 1-2, 2017 were negligent and a cause of [Francis, Jr.'s] death." ECF 57-1 at 9.  Moreover, the Motion contends that "Defendant . . . has not identified any facts in support" of her contributory negligence defense.  *Id.*; *see* ECF 57-8 at 2.  Thus, plaintiffs maintain that "there is no genuine dispute as to any material fact regarding the defense of contributory negligence and in accordance with the applicable Maryland substantive law . . ., the Plaintiffs are entitled to summary judgment as a matter of law." ECF 57-1 at 10.

11

Under Maryland law, "a defendant health care provider may raise, in a medical malpractice case, any of the affirmative defenses generally available in any negligence action, including contributory negligence . . . ." *Barbosa v. Osbourne*, 237 Md. App. 1, 9, 183 A.3d 785, 790 (2018), *cert. denied*, 460 Md. 20, 188 A.3d 926 (2018). But, "that defense may not be invoked unless there is some evidence 'that the injured party acted, or failed to act, without knowledge and appreciation, either actual or imputed, of the danger of the injury which his conduct involves.'" *Id.* at 9, 188 A.3d at 791 (quoting *Thomas*, 423 Md. at 418, 31 A.3d at 602). Thus, in medical malpractice cases, Maryland courts "have upheld the submission of a contributory negligence issue to a jury, . . ., but only where there was evidence adduced that the plaintiff had received treatment from a health care provider, that he had then been given instructions by that provider, and that he had not followed, or unreasonably delayed in following, those instructions." *Barbosa*, 237 Md. App. at 10, 183 A.3d at 791.

In *Barbosa*, the Maryland Court of Special Appeals determined that the defendant physician could not assert contributory negligence where "any purported negligence by [the plaintiff] occurred prior to any treatment he subsequently received from [the defendant]." *Id.* at 19, 183 A.3d at 796. In its view, a defendant healthcare provider cannot "'avoid responsibility for a failure to fulfill' her duty to provide reasonable medical care under the circumstances 'by claiming that [the plaintiff's] prior negligence caused or contributed to' the condition that necessitated [plaintiff's] treatment." *Id.*, 183 A.3d at 796-97 (quoting *Cavens v. Zaberdac*, 849 N.E. 2d 526, 532 (Ind. 2006)).

In this case, there is no evidence tending to show that Hawkins was contributorily negligent. ECF 57-1 at 9-10; ECF 57-8 at 2-3. Understandably, Dr. Barakat has conceded the

issue. ECF 58 at 1. Therefore, I shall also grant the Motion as to Dr. Barakat's affirmative defense of contributory negligence.

### IV.   Conclusion

In light of the foregoing, I shall grant the Motion. An Order follows, consistent with this Memorandum.

Date: January 10, 2022                                                                                  /s/
                                                                                              Ellen L. Hollander
                                                                                              United States District Judge